FILED

2015 Dec-17  PM 04:39
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| JOHN HITHON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case Number: 4:96-cv-03257-JHE |
| | ) | |
| TYSON FOODS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER[1]

On April 10, 2015, John Hithon ("Hithon") filed his application for attorneys' fees on appeal, along with supporting evidence and affidavits. (Doc. 490). Defendant Tyson Foods, Inc. ("Tyson") responded with objections. (Doc. 492). Hithon replied, along with a motion to strike the attorney affidavits attached to Tyson's response. (Docs. 494 & 495). The motion to strike was subsequently briefed. (Docs. 497 & 499). For the following reasons, Hithon's motion to strike is **DENIED**, and his application for attorneys' fees is **GRANTED** as set out below.[2]

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings. (Doc. 53).

[2] Hithon has also moved for an evidentiary hearing and oral argument. (Doc. 498). However, that motion does not state any reason either is necessary, (id. at 1), and, as Tyson does not dispute the "historical facts" in evidence and the issues are extensively briefed, the Court does not see any need for a hearing or oral argument. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorney's fees should not result in a second major litigation."); *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1303-04 (11th Cir. 1988) ("Where documentation is inadequate, the district court is not relieved of its obligation to award a reasonable fee, but the district court traditionally has had the power to make such an award without the need of further pleadings or an evidentiary hearing. Likewise, no additional evidentiary hearing or pleadings are required where fee counsel fails to provide evidence on some factor which it contends the court ought to take into account. It is perfectly proper to award attorney's fees based solely on affidavits in the record. . . . Certainly, however, where there is a dispute of material historical fact such as whether or not a case could have been settled without litigation or whether attorneys were duplicating each other's work, an evidentiary

## I. Procedural History

On September 20, 2008, the Court entered a final judgment in favor of Hithon, the sole remaining plaintiff.  (Doc. 433).  On March 19, 2013, an order was entered regarding the parties' subsequent motions for fees and costs, which reduced the hourly rate below what Hithon sought, applied an 80% across-the-board reduction, disallowed nearly $40,000 in litigation-related expenses, and awarded Hithon fees in the total amount of $281,103.25, and costs in the total amount of $16,480.51.  (Doc. 478).

Hithon appealed that order to the Eleventh Circuit.  (Doc. 479).  On appeal, Hithon argued the magistrate judge previously assigned to this case erred (1) in finding a reasonable hourly rate lower than Hithon requested, (2) in finding Hithon's counsel had failed to exercise billing judgment, (3) by ignoring the Eleventh Circuit's remand to determine fees from a prior appeal, (4) by failing to give notice and an opportunity to be heard before substantially reducing the fee, (5) by failing to give a reasonable explanation for the reduction in costs, and (6) failing to enhance the lodestar amount.  (Doc. 493-4).  On May 16, 2014, the Eleventh Circuit held the magistrate judge had not abused his discretion by finding lower hourly rates than requested, finding Hithon's counsel had failed to exercise billing judgment, or cutting Hithon's fee award by a large percentage.  (Doc. 481-1 at 3-4).

The court, however, reversed and remanded on three issues (one of which Hithon had not raised):  (1) the hours spent on Hithon's 2005 appeal should have been included, (2) attorney Eric Schnapper's work for Hithon before the United States Supreme Court should have been included, and (3) the magistrate judge abused his discretion by failing to adequately explain his reason for reducing the award of costs.  (*Id.* at 4-6).  The court directed entry of judgment for the

---

hearing is required.) (internal citations omitted).   Accordingly, Hithon's motion, (doc. 498), is **DENIED**.

amount of costs and fees stated in its opinion.   (*Id.* at 6).

Lastly, the court noted, "since [Hithon] was partially successful in the instant appeal, his counsel is entitled to reasonable attorneys' fees for this appeal, to be added to the total."   (*Id.*). The undersigned was assigned to this case upon its reopening in this Court for that purpose on August 4, 2014.

## II. Analysis

### A.  Hithon's Motion to Strike

Hithon moves to strike the affidavits of Jay St. Clair and Tobias Dykes attached to Tyson's opposition to Hithon's motion.  (Doc. 494).  Hithon contends the affidavits are not admissible and should be stricken because the Eleventh Circuit and this Court have previously noted that fees for defense firms are generally lower and affidavits from attorneys at such firms can "offer only limited guidance to the court."   (Doc. 494 at 2).   He refers to them as "meaningless," "unhelpful," and "useless."  (*Id.* at 3-4).

However, none of the cases he cites refers to them as such.  *See Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1305 (11th Cir. 1988); *Evans v. Books-A-Million*, 907 F. Supp. 2d 1284, 1304 (N.D. Ala. 2012); *Fox, et al. v. Tyson Foods, Inc.*, 4:99-cv-01612-VEH, doc. 819 at 36-37 (N.D. Ala. Feb. 17, 2009).  In fact, the *Fox* court's reference to the affidavits as providing "limited guidance" indicates they may provide *some* guidance, 4:99-cv-01612-VEH, doc. 819 at 36, and the *Evans* court relied on an admission of rate increases in one of the defense affidavits, 907 F. Supp. at 1304.   None of the three courts struck the affidavits as irrelevant but simply took the differences into account.   *See Norman*, 836 F.2d at 1305 (remanding for consideration of the differences between the attorneys referenced in the evidence and the class counsel in that case); *Fox*, 4:99-cv-01612-VEH, doc. 819 at 37 (referring to the

affidavits as "incomplete" before relying on its own expertise); *Evans*, 907 F. Supp. at 1304 (noting the defense affidavit's admission of increasing billing rates and that "a plaintiff's attorney, who takes on greater risk in litigating a case, could reasonably charge a higher rate" before awarding a higher rate).

In his reply, Hithon refers to these three cases as "controlling" authority, (doc. 499 at 2), but, as noted above, he cites to nothing in those cases indicating that the affidavits of defense attorneys are due to be stricken instead of merely considered in context. Accordingly, Tyson's affidavits will be considered in their proper context, and Hithon's motion to strike them is **DENIED**.

### B. Hithon's Motion for Attorneys' Fees

Under 42 U.S.C. § 1988, "the court, in its discretion, may allow the prevailing party . . . , a reasonable attorney's fee as part of the costs . . . ." 42 U.S.C. § 1988. "The purpose of § 1988 is to ensure 'effective access to the judicial process' for persons with civil rights grievances," and a prevailing party should recover absent special circumstances rendering an award unjust. *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (quoting H.R. Rep. No. 94–1558, p. 1 (1976)). "Generally, what constitutes a reasonable attorney's fee is calculated using the 'lodestar' method, taking the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," *Maner v. Linkan LLC*, 602 F. App'x 489, 491 (11th Cir. 2015) (citing *Hensley*, 461 U.S. at 433-34), and "there is a strong presumption that the lodestar figure is a reasonable sum," *id.* at 493 (citing *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008)). However, "[a]fter the lodestar is determined . . . , the court must next consider the necessity of an adjustment for results obtained." *Norman*, 836 F.2d at 1302.

4

### 1.  Reasonable Attorneys' Fees

#### a. Lodestar Calculation

"In determining what is a 'reasonable' hourly rate and what number of compensable hours is 'reasonable,' the court is to consider the 12 factors enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)."  *Bivins*, 548 F.3d at 1350.  *See also Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989) ("The *Johnson* factors may be relevant in adjusting the lodestar amount, but no one factor is a substitute for [the lodestar calculation].").  The *Johnson* factors are (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  488 F.2d at 717-19.

#### i. Reasonable Hourly Rate

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation," and the party seeking attorneys' fees bears the burden of producing "satisfactory evidence" the rate sought meets that standard.  *Norman*, 836 F.2d at 1299.

Hithon seeks hourly rates of $475.00 for lead attorney Alicia Haynes, $430.00 for attorney Kenneth Haynes, $500.00 for appellate attorney Charles Guerrier, $150.00 for paralegal Mistie Smith, and $125.00 for paralegal Tammy Edwards.  (Doc. 490-7 at 2; doc. 495 at 32).  These numbers are based on the affidavits of Alicia Haynes, stating a range of $375 to $650 for

Alabama employment cases, (doc. 490-1 at 5); John Saxon, stating a range of $225 to $600 for Alabama employment cases, (doc. 490-6 at 5); Kenneth Haynes, stating a range of $250 to $600 for federal employment cases in the Northern District of Alabama, (doc. 490-2 at 4); Heather Leonard, stating a range of $250 to $650 in the Northern District of Alabama, (doc. 490-4 at 6); Cynthia Wilkerson, stating a range of $250 to $650 in the Northern District of Alabama, (doc. 490-5 at 4); and Charles Guerrier, stating a reasonable rate for an attorney of his experience in the Northern District of Alabama is $500, (doc. 490-3 at 15-17).

Tyson contends, on the other hand, this Court (and the Eleventh Circuit by its affirmance) already established Hithon's attorneys' fee rates (except Guerrier) when ruling on the previous fee petition. (Doc. 492 at 18-20) (citing *Manning v. School Bd. of Hillsborough County, FL*, 135 F. Supp. 2d 1192, 1196 (M.D. Fla. 2001), and *White v. Murtha*, 377 F.2d 428, 431 (5th Cir. 1967). Hithon argues this law-of-the-case argument fails because those cases are distinguishable. The *Manning* court, he states, merely used the previous rates as a factor in its ultimate determination. (Doc. 495 at 10-11). Then, he concludes the *White* case actually supports his contention the fees should be completely relitigated because that court, despite affirming the prior order requiring set-off as law of the case, held it did not apply to the tax lien in question and the pension fund trustees could not set it off. (*Id*. at 11-12).

Hithon is right the *Manning* court did not simply use the previous numbers but used them as a baseline for determining new rates after considering the rise in rates and increased experience since that time. *See* 135 F. Supp. 2d at 1196 ("In addition to beginning with the rates previously awarded in September 1999, the Court recognizes that in the period since that Order was entered, attorneys' fees have likely risen in the Tampa area. The Court also recognizes that in that time period, Dawson and Bolden have likely gained experience."). However, the *White*

6

case does not, as Hithon argues, support his contentions. The *White* court merely held the taxes did not fall under the prior order because they were imposed on the pension fund trustees themselves after they purchased the property and, therefore, were not an obligation incurred by the debtor. *See* 377 F.2d at 432-33. Nor is this, as Hithon implies, a situation in which "a subsequent trial produces substantially different evidence." (*See* doc. 495 at 12) (citing *Wheeler v. City of Pleasant Grove*, 746 F.2d 1437, 1440 (11th Cir. 1984)). The "substantially different evidence" must undermine the prior order, *see United States v. Robinson*, 690 F.2d 869, 872 (11th Cir. 1982) (refusing to follow original opinion based on faulty assumption contradicted by subsequent evidence), which Hithon has not argued here, (*see* doc. 495 at 12) (arguing just that the Court has not determined a reasonable rate for time after the previous order). The reasonable-rate determination previously made by this Court and affirmed by the Eleventh Circuit is the law of the case regarding a reasonable rate prior to the appeal, and, as in *Manning*, it creates a baseline from which to determine the reasonable rate for attorneys covered by that order.

However, Tyson's contention the law of the case requires that rate to be exactly the same as in that previous order is also incorrect. (*See* doc. 492 at 19-20). It relies on the date of the Eleventh Circuit's opinion to argue all time spent before that should be covered by that mandate. (*Id.* at 18-20). However, the Eleventh Circuit's opinion was not that the stated rates were reasonable for the time spent litigating that appeal, but that they were reasonable for the time spent before this Court's original fee award. Nor does the Eleventh Circuit's award of additional hours "at the hourly rate determined by the district court" contradict this conclusion. (*See* doc. 492 at 18) (arguing the Eleventh Circuit opinion "does not mandate that hourly rates need to be recalculated for work done on the last appeal" because it awarded the additional hours at the rate

set by this Court).   The additional hours were for hours expended in earlier appeals to which this Court's earlier determinations of reasonable hours, rates, and adjustments would have been applicable.   (*See* doc. 481-1 at 4 n.1) (citing doc. 477-1 at 27 and applying the hours, rates, and adjustments as set out in doc. 478 at 22).   The new hours expended on the fee appeal must be based on the prior order but re-examined to determine whether the rates should have increased over the past year.   *See Manning*, 135 F. Supp. 2d at 1196.

Citing the affidavits of Jay St. Clair and Tobias Dykes, Tyson contends that, if the Court determined an increase is necessary, the increase should not be more than $40-$45.   (*See* doc. 492 at 20 n.3).   Specifically, Tyson's witnesses have testified that the market would most likely bear an increase of only $10-$20 per year.   (Doc. 493-6 at 6; doc. 493-7 at 6).   Alicia Haynes's affidavit indicates this Court in another case had previously awarded her rates of $400 per hour for work performed through 2010 and $440 for work from 2010 to 2012.   (Doc. 490-1 at 6) (citing *Hall v. Siemens VDO Automotive*, No. 5:06-cv-01208).   The consistency of this evidence supports a finding that an increase of $40-$45 per hour over the amount awarded to attorneys covered by the previous fee order would be appropriate in these circumstances.

This Court's previous order did not address a reasonable rate for Charles Guerrier and, therefore, no reasonable rate has yet been set for him for any time period within the case.   (*See* doc. 478 at 22).   Tyson contends Guerrier should be awarded the $400 per hour he requested and was awarded in 2012 in *Evans* and in 2014 in *Hall v. Siemens VDO Automotive Electronics Corp.*, 5:06-cv-1208-SLB (N.D. Ala. March 31, 2014).   In his affidavit, Guerrier acknowledges he sought this amount in 2012 and 2014; however, he asserts he has since become aware higher rates are charged in the Northern District of Alabama for similar work by attorneys of similar experience and has, therefore, raised his rate to $500.   (*See* doc. 490-3 at 15-17) (citing *Fox*,

4:99-cv-01612-VEH, doc. 819, for its awards of $550 to experienced employment attorneys in Birmingham in 2009).

Tyson's assertion based solely on prior cases is shaky on several grounds.  First, the *Hall* court awarded an amount partially based on *Evans* and with no opposition from the defendants. *See* 5:06-cv-1208-SLB, doc. 193 at 11.  At the time of the *Evans* award, Guerrier was not admitted to practice in Alabama and had not entered an appearance in that case.  907 F. Supp. 2d at 1304.  Neither is the case here.  Second, the *Evans* award was entered in 2012 and, even if the Court simply adopted the *Evans* court's numbers, Guerrier would still be entitled to, at least, a comparable increase to that applied to the reasonable rates established for the other attorneys. Generally, Hithon's affidavits assert amounts $225 to $650 for employment attorneys in the district, (doc. 490-1 at 5; doc. 490-2 at 4; doc. 490-4 at 6; doc. 490-5 at 6; doc. 490-6), and Tyson's affidavits assert a reasonable fee for Guerrier would be $415 or $420, (doc. 493-6 at 7; doc. 493-7 at 6-7).[3]  Based on rates awarded other employment attorneys in the district, Guerrier states a reasonable rate for his services is $500.  (Doc. 490-3 at 17).

Hithon does not argue the issues on appeal were particularly novel or difficult, which is consistent with the undersigned's review of those issues, and there is nothing about the case making it particularly undesirable; however, Guerrier's affidavit does indicate considerable experience in employment litigation and appeals.  Considering the parties' affidavits, the nature of the appeal, and the previous awards to Guerrier and similar attorneys in the district, the Court finds the evidence supports a reasonable attorney fee for Guerrier of $475 per hour.

---

[3] The numbers given in the Tyson affidavits are commensurate with the hourly rates Tyson's counsel has charged it clients.  (Doc. 493-6 at 4; doc. 493-7 at 4).  However, as noted in the discussion on Hithon's motion to strike, the rates of a defense firm have limited probative value in determining the rates of a plaintiff's attorney, *see* Section A., *supra.*, and Eleventh Circuit precedent acknowledges rates at established defense firms are often lower than those a plaintiff's attorney could reasonably charge, *Norman*, 836 F.2d at 1305.

Accordingly, the Court finds the following rates are reasonable for the attorneys and paralegals involved in the appeal at issue:

| ATTORNEY/PARALEGAL | HOURLY RATE AWARDED |
|---|---|
| Alicia Haynes | $420 |
| Kenny Haynes | $370 |
| Charles Guerrier | $475 |
| Mistie Smith | $145 |
| Tammy Edwards | $125 |

### ii. Reasonably Expended Hours

In determining the hours reasonably expended on the litigation, the Court may reduce the hours claimed as being excessive or unnecessary, redundant, or spent on discrete and unsuccessful claims. *See Norman*, 836 F.2d at 1301-02. "When a district court finds the number of hours claimed is unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut," but it may not double-count by doing both on the same grounds. *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350-51 (11th Cir. 2008).[4] As Tyson has objected to specific hours and Hithon has responded to each objection, the Court will address these on an hour-by-hour basis, except for those objected to as spent on unsuccessful claims, which will be subsumed into the subsequent "results obtained" lodestar adjustment step.[5]

---

[4] Any reduction at the reasonable-hours stage is separate from any adjustment of the lodestar for results obtained (as long as the reasons for one do not overlap with the other). *See Bivins*, 548 F.3d at 1351-52.

[5] Unsuccessful claims are considered for purposes of the adjustment of the overall reasonableness of the lodestar figure, *Norman*, 836 F.2d at 1302 ("After the lodestar is

Tyson objects to the hours on several bases. It asserts some of the hours are merely attorneys or paralegals performing clerical acts, which are not recoverable as attorneys' fees. (Doc. 492 at 22-25). *See also Jean v. Nelson*, 863 F.2d 759, 778 (11th Cir. 1988); *Allen v. McClain EZ Pack of Alabama, Inc.*, No. 03-0490-WS-M, 2005 WL 1926636, at *3 (S.D. Ala. Aug. 8, 2005). It further asserts the time claimed for "law clerks" is not properly documented and should not be included. (Doc. 492 at 25-26). Hithon agreed to withdraw the "law clerk" time, resolving that issue. (Doc. 495 at 30). Lastly, Tyson objects to hours that, it asserts, are "otherwise unnecessary." (*Id.* at 26-28).

### a) Clerical Time

First, Tyson is correct that hours may not be charged to the opposing party if they are administrative or clerical functions, regardless of who performs them. *See Allen*, No. 03-0490-WS-M, 2005 WL 1926636, at *3 (citing *Missouri v. Jenkins ex rel. Agyei*, 491 U.S. 274, 288 n.10 (1989)). Hithon, as the party seeking the fee award, has the burden of establishing he is entitled to them. *Norman*, 836 F.2d at 1299. Initially, Hithon has agreed to withdraw eleven of the twenty-one time entries Tyson contends are clerical. (Doc. 495 at 25-29). Of the remaining ten, Hithon argues they were not clerical functions but required at least some legal skill and discretion. (*Id.*). Specifically, the parties dispute line items 304, 317, 320, 321, 322, 336, 341, 344, 346, and 348. (*See* doc. 493-2 at 3-5; doc. 495 at 25-29). On each entry, Tyson merely asserts "[t]he work in this entry is clerical." (Doc. 493-2 at 3-5).

In line 304, Hithon claims an hour and a half Guerrier spent "[w]ork[ing] with Time

---

determined . . . , the court must next consider the necessity of an adjustment for results obtained."), and it would be improper to reduce the fees awarded twice for the same factor, *Bivins*, 548 F.3d at 1352 (citing *City of Burlington v. Dague*, 505 U.S. 557, 563 (1992)); *accord Barnes v. Zaccari*, 592 F. App'x 859, 871 (11th Cir. 2015) (citing *Bivins* for the proposition that considering a factor for both the lodestar and the adjustment "amounts to double-counting").

Matters to develop a report format that can be edited." (Doc. 493-2 at 3; doc. 495 at 25). Hithon contends Tyson admits a fee petition may be rejected for being unorganized and Guerrier's time was spent making certain Hithon's attorneys' billable hour system was "capable of producing a report which will meet this standard." (Doc. 495 at 25). The Court agrees this is not entirely clerical or administrative along the lines of photocopying, stamping, updating files and binders, or labeling documents. *See Allen*, No. 03-0490-WS-M, 2005 WL 1926636, at *3.

In line 317, Hithon claims two and a half hours Paralegal Tammy Edwards spent "[r]eviewing pleadings for missing documents for appeal records to prepare for oral argument" and "[s]ecur[ing] and analy[zing] all documents used in fee affidavit and all time records to assist in oral argument." (Doc. 493-2 at 3; doc. 495 at 25). Hithon contends "[t]his is typical work which a paralegal would do to assist an attorney in preparing for oral argument" and "requires an understanding of the legal issues raised on appeal and the ability to identify additional documents, not previously identified by the attorneys . . . ." (Doc. 495 at 25). The Court agrees this is not merely clerical work but is work that would, in the absence of a paralegal, need the skills of an attorney.

In line 320, Hithon claims four hours Edwards spent "[o]rganizing, copying and labeling binders/documents for [oral argument]." (Doc. 493-2 at 4; doc. 495 at 26). Hithon contends this is not clerical because the documents must be properly organized and labeled to be readily available at oral argument. (Doc. 495 at 26). While the Court agrees organization of binders and documents is an important legal function, it does not agree copying and applying labels are not purely clerical functions. However, since Hithon has not divided the clerical and non-clerical work into separate entries, the Court finds that crediting one of the four hours as properly awardable is a fair result.

In line 321, Hithon claims half an hour Edwards spent "[m]eeting with [Guerrier] regarding all of Hithon documents and how to organize them and what needed to be retained regarding appeal." (Doc. 493-2 at 4; doc. 495 at 26). Hithon contends this is not clerical work but is essential to ensure "the documents will be properly organized and available to [the arguing attorney] should he need them during argument." (Doc. 495 at 26). The Court agrees this is not entirely clerical work along the lines of photocopying, stamping, updating files and binders, or labeling documents.

In line 322, Hithon claims three hours Edwards spent "[r]eview[ing] client documents in the basement and pull[ing] documents requested by [Guerrier] and/or Alicia [Haynes]." (Doc. 493-2 at 4; doc. 495 at 26). Hithon contends "[t]his is not simply pulling all documents in the file" but required some "exercise of judgment" "as to which documents to identify." (Doc. 495 at 26). The description does not indicate that to be the case but, as it states, suggests Edwards "pull[ed] documents *requested*" by the attorneys. (*See* doc. 493-2 at 4; doc. 495 at 26). The description does not indicate the type of broad request requiring legal judgment implied by Hithon's argument. The Court finds this was clerical work and is not properly awardable as fees.

In line 336, Hithon claims two-tenths of an hour Paralegal Mistie Smith spent in a "[t]elephone conference with Mr. Caleb Davis[6] regarding the Confidential Mediation Statement and advising that Mr. Hithon did not need to be present for the mediation . . . ." (Doc. 493-2 at 4; doc. 495 at 27). Hithon contends "[d]irect communications with the court mediator about the contents of the confidential mediation statement . . . are matters which would routinely be handled by an attorney or paralegal." (Doc. 495 at 27). The Court agrees such communications would likely require legal knowledge, especially considering the fact Smith was drafting the

---

[6] Caleb Davis was the mediator in a July 2013 mediation of this case. (*See* doc. 490-9 at 29).

Confidential Mediation Statement, (doc. 490-9 at 29), and, in the absence of a paralegal, the communications would have required an attorney.

In line 341, Hithon claims another two-tenths of an hour Smith spent in a "[t]elephone conference with Eleanor Dixon regarding status of Motion for 7-Day Extension in filing response brief." (Doc. 493-2 at 4; doc. 495 at 28). Hithon contends "[t]his is not a simple call to determine if the motion was or was not granted" but reflects a substantive telephone conference regarding the motion for an extension and "[c]ommunications with the Court would ordinarily be handled by an attorney or paralegal." (Doc. 495 at 28). The description, however, does not support this interpretation. It describes a short call about the "status" of the motion. There is no indication from the record this was a call requiring legal expertise and will not be awarded as fees.

In line 344, Hithon claims another two-tenths of an hour Smith spent "review[ing] . . . Calendar Acknowledgment from Eleventh Circuit Court of Appeals" and "filing . . . Calendar Receipt Acknowledged with Eleventh Circuit Court of [A]ppeals for oral argument . . . ." (Doc. 493-2 at 5; doc. 495 at 28). Hithon contends this is not a clerical function because the notice is directed to counsel, counsel must be signed in to view the calendar, and the acknowledgement, therefore, must be done "under direct supervision of counsel." (Doc. 495 at 28). Just because counsel's password is necessary to complete the clerical function does not make it any less clerical. No legal skill is required to acknowledge receipt of the Calendar Acknowledgment. The Court finds this was a clerical function.

In line 346, Hithon claims three-tenths of an hour Smith spent "[r]evis[ing], finaliz[ing] and mail[ing] correspondence to John Ley, Clerk of the 11th Circuit Court of Appeals with memorandum order from the Hall matter." (Doc. 493-2 at 5; doc. 495 at 29). Hithon contends

this is not clerical because it "involves drafting a direct correspondence to the clerk of courts." (Doc. 495 at 29). However, the entry does not say Smith "drafted" correspondence to the clerk of court, but that she "*revise[d]*, finalize[d] and mailed" what was clearly a previously drafted letter. (Doc. 493-2 at 5; doc. 495 at 29) (emphasis added). The letter appears to have been drafted by Guerrier. (Doc. 490-9 at 22) (including an entry on the same date stating he "[d]rafted letter transmitting supplemental authority to the Eleventh Circuit."). Revising and mailing an attorney's letter is certainly a clerical function and will not be awarded as fees.

In line 348, Hithon claims four-tenths of an hour Smith spent in a "[t]elephone conference with Valerie, clerk with the Eleventh Circuit Court of Appeals advising that supplemental authority letter must be filed with the Court electronically." (Doc. 493-2 at 5; doc. 495 at 29). Hithon contends "[t]his communication requires an understanding of the rules related to the filing of supplemental authorities with the court." However, the description merely conveys a conversation in which an Eleventh Circuit clerk informed Smith the supplemental authority letter would need to be filed with the Court electronically. As with the previous "telephone conference" with the Eleventh Circuit Clerk's Office, there is no indication from the record that any legal skill was necessary to the discussion, and it will not be awarded as fees.

In sum, seven and one-tenth hours of Hithon's claimed time is not chargeable as attorneys' fees, in addition to the time voluntarily withdrawn in his reply: 6.0 hours billed by Edwards and 1.1 hours billed by Smith. Altogether, the reasonably expended hours calculation is reduced by 9.2 hours for Edwards and 2.4 hours for Smith.

### b)  Other Challenged Time

Next, Tyson objects to the time Guerrier spent, as Tyson terms it, "getting up to speed" on the case and on research regarding the "n-word." (Doc. 492 at 26; doc. 493-2 at 2, line nos.

162, 164, & 166).   Tyson contends time getting up to speed is not properly billed to a client or one's adversary.   (*Id.* at 27) (citing *Lang v. Reedy Creek Improvement Dist.*, 1997 WL 809200, *5 (M.D. Fla. 1997)).   Hithon asserts Guerrier was not merely "getting up to speed" but reviewed the documents in preparation for responding on appeal to the fee order's factual finding Alicia Haynes had violated the court's ruling by referring to the tax consequences of any jury award during oral argument to the jury.   (Doc. 495 at 31) (citing doc. 478 at 21 n.10).   Tyson further contends the "n-word" was not relevant to the case but was improperly injected into the case by Hithon's counsel.   (*Id.* at 27) (citing *Ash v. Tyson Foods, Inc.*, 664 F3d 883, 896 n.8 (11th Cir. 2011)).   Hithon asserts this was not irrelevant because the issues were attorneys' fees and, since both the trial court and earlier appellate panel used it to criticize trial counsel, the research was necessary in order to respond to any criticism from the bench related to the use of the "n-word." (Doc. 495 at 31-32).   The Court finds these are reasonable hours expended preparing for appeal.

### b. Lodestar Total

Hithon claims the following unchallenged or otherwise reasonably expended hours[7] for each of his attorneys and paralegals:   158.9 hours for Alicia Haynes, (doc. 490-9 at 14); 19.7 hours for Kenny Haynes, (*id.* at 16); 300.85 hours for Charles Guerrier, (*id.* at 27); 6.3 hours for Tammy Edwards, (*id.* at 28) (as modified above); and 12.7 for Mistie Smith, (*id.* at 31) (as modified above).   Therefore, the lodestar subtotal for Alicia Haynes is $66,738.00; for Kenny Haynes is $7,289.00; for Charles Guerrier is $142,903.75; for Tammy Edwards is $787.50; and for Mistie Smith is $1,841.50.   Altogether, the total lodestar figure for attorneys and paralegals' fees is $219,559.75.

---

[7] As noted above, these are the hours Tyson has not challenged or the Court has otherwise found reasonable, having reserved the discussion of the successfulness of the claims toward which those hours were expended for any subsequent, "results obtained" lodestar adjustment.

### c. Adjustment

In discussing adjustments to the lodestar amount, the Eleventh Circuit has stated:

After the lodestar is determined by multiplication of a reasonable hourly rate times hours reasonably expended, the court must next consider the necessity of an adjustment for results obtained. If the result was excellent, then the court should compensate for all hours reasonably expended. If the result was partial or limited success, then the lodestar must be reduced to an amount that is not excessive. In doing so, the court may attempt to identify specific hours spent in unsuccessful claims or it may simply reduce the award by some proportion. A reduction is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole. Where all theories derive from a common core of operative facts, the focus should be on the significance of overall results as a function of total reasonable hours. It is improper to make the reduction based on a simple ratio of successful issues to issues raised. The vindication of a constitutional right is important even if only a small amount of money is involved.

*Norman*, 836 F.2d at 1302.

Tyson argues the lodestar number should be drastically reduced because Hithon's appeal failed on its two primary arguments and succeeded on only "three minor points," resulting in an increased award of only 5% of what was sought on appeal. (Doc. 492 at 29-30). Tyson also notes Hithon spent only six pages of his brief's forty-five pages of argument discussing the successful claims, and he spent none of the reply's twenty-five pages of argument on successful claims. (*Id.* at 12; doc. 493-4; doc. 493-5). Tyson ultimately asserts the fee should be reduced by 50% "at a minimum" but the Court would be justified in applying the same 80% reduction applied to the prior petition. (Doc. 492 at 32).

Hithon responds that no further reduction to the lodestar is required because the appeal increased the attorney fee by 47%, which "[w]hile it may be only [a] small percentage of what was sought . . . , it is a significant victory for a Plaintiff intent on vindicating his civil rights." (Doc. 495 at 36). While it is true the attorney's vindication of the plaintiff's civil rights is worthy of consideration when determining the attorney's reasonable fees, the extra layer between

17

the successful civil-rights claims and the successful fee-appeal claims raises different considerations for appeals of "fees for fees" petitions.

While completely denying compensation for time spent on fee issues would "diminish the proper net award of attorney's fees for the successful civil rights claim," *Thompson v. Pharmacy Corp. of Am.*, 334 F.3d 1242, 1245 (11th Cir. 2003), the court also needs to consider how the award of fees for fees creates an incentive to expand the litigation on an issue that only indirectly benefits the plaintiff, *see id.* ("Lawyers should not be compensated for turning the litigation about attorneys' fees into a second major litigation.") (internal quotation marks omitted); *Souza v. Southworth*, 564 F.2d 609, 614 (1st Cir. 1977) ("[T]he fact that litigation over fees only indirectly benefits the plaintiff class is a consideration of some importance in a determination of the reasonableness of a particular fee for these services."); *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1206 (10th Cir. 1986) ("There is a difference, however, between time necessary to prepare and submit an application for fees, and hours spent disputing a fee award. The latter are especially suspect . . . ."). In contrast to the underlying civil-rights litigation, courts have not always looked kindly on appeals of fees-for-fees petitions. *See, e.g.*, *Hensley*, 461 U.S. at 442 (referring to "appeals from awards of attorney's fees, after the merits of a case have been concluded, when the appeals are not likely to affect the amount of the final fee" as "one of the least socially productive types of litigation imaginable") (Brennan, J., with Marshall, Blackmun and Stevens, JJ., concurring in part and dissenting in part); *Wolfel v. Bates*, 749 F.2d 7, 9 (6th Cir. 1984) ("We bring these conclusions to the district court's attention only in order to prevent yet another round of the least socially productive type of litigation imaginable: appeals from awards of attorney's fees.") (internal quotation marks omitted); *Marshak v. Branch*, 980 F.2d 727 n.7 (4th Cir. 1992) (noting the Fourth Circuit has "embraced Justice Brennan's belief"

regarding appeals from awards of attorney's fees).  Moreover, the Supreme Court has held that, "[b]ecause *Hensley* . . . requires the district court to consider the relationship between the amount of the fee awarded and the results obtained, fees for fee litigation should be excluded to the extent that the applicant ultimately fails to prevail in such litigation," *Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 163 n.10 (1990) (applying *Hensley* in the Equal Access to Justice Act context).

Hithon further contends this Court should not consider a reduction based on the ratio between the increase he sought on appeal and the additional fees awarded because "[t]he Supreme Court has 'reject[ed] the proposition that fee awards under § 1988 should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers.'"  (Doc. 495 at 35-36) (quoting *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986)).  However, the two sentences before that quote explicitly state "[t]he amount of damages a plaintiff recovers is certainly relevant to the amount of attorney's fees to be awarded" and is "one of many factors that a court should consider in calculating an award of attorney's fees."  *Rivera*, 477 U.S. at 574. The *Rivera* court was addressing whether damages recovered should be the only consideration and concluding that other factors, such as the vindication of rights and the public benefit, should also be considered.  *Id.*  In the fees-for-fees context, on the other hand, the vindication of rights is less immediate, and its significance lies in the extent to which the award for that vindication would be diluted by forcing an attorney to defend the original award with no compensation for the additional work.  *See Thompson*, 334 F.3d at 1245.  This rationale supports the *Jean* Court's conclusions that fees for fees are compensable but "fees for fee litigation should be excluded to the extent that the applicant ultimately fails to prevail in such litigation," 496 U.S. at 162 & 163 n.10.  The ratio between the increase Hithon sought on appeal and the additional fees awarded is certainly relevant to that determination.

Lastly, Hithon cites *Blanchard v. Bergeron*, 489 U.S. 87, 91 (1989), for the proposition he should be entitled to "all time reasonably expended on the matter." (Doc. 495 at 37-38). The implication appears to be that the lodestar should not be reduced based on the limited success of the appeal because he should be compensated for all time reasonably expended. However, this would be a misreading of *Blanchard*, which, in discussing whether a fee award could be greater than what would be paid under the plaintiff's contingency contract, noted there would be no windfall for the plaintiff's attorney because "[f]ee awards [in civil rights cases] are to be reasonable, reasonable as to billing rates and reasonable as to the number of hours spent *in advancing the successful claims*." 489 U.S. at 946 (emphasis added). The *Blanchard* Court also repeatedly referred to the *Johnson* factors, one of which is "results obtained," in support of its holding. *See id.* at 91-93 & 91 n.5. The Court held "all time reasonably expended" should be awarded, but its definition of "all time reasonably expended" already included the adjustment based on results obtained.

While the increase in fees awarded on appeal was not insignificant, Hithon cannot argue the results were "excellent" considering he attacked the magistrate judge's largest reductions and sought an additional two-and-a-half million dollars but, unsuccessful on those arguments, was awarded an additional $140,839 in fees and costs instead. In fact, the Eleventh Circuit's opinion explicitly referred to the result as "partially successful." (Doc. 481-1 at 6). As a result, the lodestar will be reduced to a reasonable amount for the results obtained. *See Norman*, 836 F.2d at 1302; *Jean*, 496 U.S. at 163 n.10. Considering that the only direct result obtained in the appeal in question was monetary relief (the increase in attorneys' fees), the monetary result necessarily must be the starting point for determining the degree of success and resulting adjustment. The adjustment would then be applied to the lodestar to the extent it does not unduly

dilute the prior award and undermine the purpose of the fee-shifting statute.

There are several ways to consider the "results obtained" even where there is limited or no non-monetary relief and the focus is primarily on how much money was obtained as a result of the litigation. The amount obtained can be, as Tyson would have it, compared to the total amount sought, which in this case would be around 5% (*i.e.*, $140,839.33 instead of the roughly two-and-a-half million dollar increase sought). (*See* doc. 492 at 30). This comparison focuses on the successful claims versus the unsuccessful ones. However, the amount obtained could also be, as Hithon would have it, compared to the previous amount awarded, which in this case would be an increase of around 47% (*i.e.*, $140,839.33 on top of $297,583.76). (Doc. 495 at 31). Another way to look at this number is to consider that the increase accounts for roughly a third of the total fees and costs awarded (*i.e.*, $140,839.33 out of $438,423.09). These latter comparisons focus on the effectiveness of the successful claims. Both types of comparisons are important aspects of the litigation's result.

Given the Supreme Court's policy against incentivizing fees-for-fees appeals, Hithon cannot be rewarded for the time spent seeking twenty times more than he was entitled to. *See Jean*, 496 U.S. at 163 n.10; *Hensley*, 461 U.S. at 442. Yet, without the successes from the appeal, Hithon would have obtained a third less than the amount to which the Eleventh Circuit determined he was ultimately entitled: the Eleventh Circuit did not award him "more" fees and costs; it awarded him that to which he was entitled but not given in the original award. Considering these aspects together, the undersigned finds the lodestar should be adjusted downward by 50%, which should reduce the incentive to bring such unsuccessful claims on appeal in the future while still rewarding the limited success and preventing substantial dilution of the overall award. Accordingly, Hithon is awarded $109,779.88 in attorneys' fees.

### 2.  Costs

Tyson does not challenge Hithon's requested costs.  (Doc. 492 at 33).  Therefore, Hithon is awarded the full $3,513.75 in costs he has requested.  (*See id.*; doc. 490-10 at 4).

## III. Conclusion

The Eleventh Circuit's mandate ordered entry of judgment for attorneys' fees of $382,403.25 and costs of $56,019.84 with the reasonable attorneys' fees and costs of that appeal added to the total.  (Doc. 481-1 at 6).  Accordingly, Tyson Foods, Inc. is **ORDERED** to pay attorneys' fees of $492,183.13 and costs of $59,533.59, totaling $551,716.72.  These fees and costs shall be paid to Hithon's counsel, Alicia Haynes, for further disbursement.

DONE this 17th day of December 2015.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE